JUDGE MARRERO

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

09 CV 8090

HUSTON BELVETT,

                         Plaintiff,                      09 Civ. _____

      – against –

CITY OF NEW YORK; Commissioner MARTIN F. HORN;     **COMPLAINT AND**
Chief of Department CAROLYN THOMAS; Deputy               **JURY DEMAND**
Commissioner RICHARD R. WHITE;
Warden EDMUND DUFFY; Warden EMMANUEL BAILEY;   **ECF CASE**
Assistant Deputy Warden CHARLTON LEMON, Shield # 109;
Captain THEO PRIMM, Shield # 1497, and
Officers JOHN DOES # 1-10.

                        Defendants.

------------------------------------------------------------x

RECEIVED SEP 22 2009 U.S.D.C. S.D.N.Y. CASHIERS

## PRELIMINARY STATEMENT

      1.     This is a civil rights action brought by plaintiff Huston Belvett ("Mr. Belvett" or "plaintiff") for damages pursuant to 42 U.S.C. § 1983. While in the custody of the New York City Department of Correction ("DOC" or "the Department"), and detained at two different facilities on Rikers Island, Mr. Belvett was twice viciously beaten by staff members of the Department and then callously deprived of prompt medical care.

      2.     The Department and its supervisors are, and have been, aware that Department staff members persistently use brutal force and cause prisoners serious injuries, and they have consistently, for years, failed to take meaningful and effective steps to curb the staff brutality in the jails. The incidents involving Mr. Belvett are part of a pattern of incidents where DOC officers use excessive and injurious force to command, control, or disciple inmates. As a

result of these attacks, Mr. Belvett suffered significant injuries, including, without limitation, a facial fracture, serious injuries to his wrist, cuts on the foot and face, and bruises and swelling all over his body.

3. Mr. Belvett now seeks redress against the DOC employees who assaulted him, their supervisors, and the City of New York.

## JURISDICTION AND VENUE

4. This action arises under the Fourteenth Amendment to the United States Constitution and under 42 U.S.C. §§ 1983 and 1988.

5. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3)-(4) and 1367(a).

6. The acts complained of occurred in the Southern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

7. This Court has supplemental jurisdiction over the New York State claims pursuant to 28 U.S.C. § 1367.

## JURY DEMAND

8. Plaintiff demands trial by jury in this action.

## PARTIES

9. Huston Belvett is a citizen of the United States and resided at Rikers Island in Bronx County at the time these events occurred. At the time of the first beating, Mr. Belvett was detained at the George Motchan Detention Center ("GMDC"). At the time of the second beating, Mr. Belvett was detained at the Robert N. Davoren Center ("RNDC").

10. Defendant City of New York ("City") is a municipal corporation which, through its Department of Correction ("DOC" or the "Department"), operates a number of detention jails. The Department, through its senior officials at the central office, in each facility, and in its specialized units, promulgates and implements policies, including those with respect to the use, reporting and investigation of force by uniformed staff, and access to medical and other program services mandated by local law and court orders. In addition, senior officials in the Department are aware of and tolerate certain practices by subordinate employees in the jails, including those that are inconsistent with formal policy. These practices, because they are widespread, long-standing, and deeply embedded in the culture of the agency, constitute unwritten Department policies or customs. The Department is also responsible for the appointment, training, supervision, and conduct of all DOC personnel, including the defendants referenced herein.

11. At all times relevant hereto, Martin Horn was the Commissioner of DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, defendant Horn, as Commissioner of DOC, was responsible for the policy, practice, supervision, implementation, and conduct of all DOC matters and was responsible for the training, supervision, and conduct of all DOC personnel, including the defendants referenced herein. As Commissioner, defendant Horn was also responsible for the care, custody, and control of all inmates housed in the Department's jails. As Commissioner, Horn was provided on a regular basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in the Department jails, and was consistently and regularly made aware of the

number and severity of injuries sustained by inmates at the hands of staff members in "use of force incidents" in the jails. In addition, at all relevant times, defendant Horn was responsible for enforcing the rules of the DOC, and for ensuring that DOC personnel obey the laws of the United States and of the State of New York. Defendant Horn is sued in his individual capacity.

12. At all times relevant hereto, Carolyn Thomas was the Chief of Department of DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of her employment as such, and acting under color of state law. As Chief of Department, she is the highest ranking uniformed member of the department, and is responsible for the supervision, oversight, and discipline of the uniformed security staff in all the Department jails. She is also responsible for the care, custody, and control of all inmates in the Department jails. As Chief of Department, Thomas is provided on a regular basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in the Department jails, and is consistently and regularly made aware of the number and severity of injuries sustained by inmates at the hands of staff members in "use of force incidents" in the jails. Defendant Thomas is sued in her individual capacity.

13. At all times relevant hereto, Richard R. White was the Deputy Commissioner of the Department, Investigation Division. As Deputy Commissioner, his responsibilities include supervising the investigation of any and all incidents in which any employee of the Department used force against any inmate, or is alleged to have used force, and recommending Department discipline against staff believed to have violated Department policies and rules including those concerning use of force. Defendant White is provided on a regular basis with reports of applications of force, allegations of unreported use of force, and other breaches of

security in the Department jails, and is consistently and regularly made aware of the number and severity of injuries sustained by inmates at the hands of staff members in "use of force incidents" in the jails. Defendant White is sued in his individual capacity.

14. At all times relevant hereto, Edmund Duffy was the Warden of RNDC. As the facility warden, his responsibilities included supervision of correction officers, captains, and other supervisors with respect to the care, custody and control of inmates confined in the jail. These responsibilities were and are required to be carried out in a manner consistent with the legal mandates that govern the operation of DOC and its jails, including Department Directives and Orders governing the use of force and the reporting of use of force and the Board of Correction Minimum Standards. As warden, defendant Duffy is provided on a regular basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in the Department jails, and is consistently and regularly made aware of the number and severity of injuries sustained by inmates at the hands of staff members in "use of force incidents" in the jails. Defendant Duffy is sued in his individual capacity.

15. At all times relevant hereto, Emmanuel Bailey was the Warden of GMDC. As the facility warden, his responsibilities included supervision of correction officers, captains, and other supervisors with respect to the care, custody and control of inmates confined in the jail. These responsibilities were and are required to be carried out in a manner consistent with the legal mandates that govern the operation of DOC and its jails, including Department Directives and Orders governing the use of force and the reporting of use of force and the Board of Correction Minimum Standards. As warden, defendant Bailey was provided on a regular basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in

the Department jails, and was consistently and regularly made aware of the number and severity of injuries sustained by inmates at the hands of staff members in "use of force incidents" in the jails. Defendant Bailey is sued in his individual capacity.

16. At all times relevant hereto, Assistant Deputy Warden Charlton Lemon, Shield # 109, was a supervising officer within the DOC and assigned to RNDC at Rikers Island, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. Defendant Lemon worked at Rikers Island at the time of the incident alleged herein, and participated, or witnessed and failed to intervene in the beating of plaintiff. Defendant Lemon is sued in his individual capacity.

17. At all times relevant hereto, Captain Theo Primm, Shield # 1497, was a supervising officer within the DOC and assigned to RNDC at Rikers Island, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. Defendant Primm worked at Rikers Island at the time of the incident alleged herein; and is believed to have participated, or witnessed and failed to intervene in the beating of plaintiff. Defendant Primm is sued in his individual capacity.

18. At all times relevant hereto, Correction Officers John Does # 1 and 2, whose actual names and shield numbers plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, but who are sued herein by the fictitious designation "John Doe," were DOC officers, acting in the capacity of agent, servant, and employee of defendant City, within the scope of their employment as such, and acting under color of state law. On information and belief, defendants John Does # 1 and 2 worked at GMDC at Rikers Island on October 5, 2008; participated, or witnessed and failed to intervene in the beating of plaintiff; and

failed to provide medical care to plaintiff despite his obvious need for assistance and his requests for care.  Defendants John Does # 1 and 2 are sued in their individual capacity.

19.     At all times relevant hereto, Correction Officers John Does # 3-10, whose actual names and shield numbers plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, but who are sued herein by the fictitious designation "John Doe," were officers of DOC, acting in the capacity of agents, servants, and employees of defendant City, within the scope of their employment as such, and acting under color of state law.  On information and belief, defendants John Does # 3-10 worked at RNDC at Rikers Island on November 5, 2008, and participated, or witnessed and failed to intervene in the beating of plaintiff.   Defendants John Does # 3-10 are sued in their individual capacities.

20.     John Does # 1-10 are collectively referred to as "Doe Defendants"; defendants Horn, Thomas, White, Duffy, and Bailey are collectively referred to as "Supervisory Defendants."  Doe Defendants, defendant Lemon, defendant Primm, and the Supervisory Defendants are collectively referred to as the "Individual Defendants."

## STATEMENT OF FACTS

**New York City's Jails:  A History of Abuse**

21.     For decades, through Department reports and civil litigation, DOC has been aware of the routine, dangerous, and unconstitutional use of excessive force by staff at individual facilities in the large, multi-jail New York City Department of Correction.[1]

---

[1] *See, e.g., Fisher v. Koehler*, 692 F. Supp. 1519 (S.D.N.Y. 1988), *injunction entered*, 718 F. Supp. 1111 (1989), *aff'd*, 902 F.2d 2 (2d Cir. 1990) [Correction Institution for Men]; *Jackson v. Montemagno*, CV 85-2384 (AS) (E.D.N.Y.) [Brooklyn House of Detention]; *Reynolds v. Ward*, 81 Civ. 101 (PNL) (S.D.N.Y.) [Bellevue Prison Psychiatric Ward]; *Sheppard v. Phoenix*, 91 Civ. 4148 (RPP) (S.D.N.Y.) [Central Punitive Segregation Unit].

22. For example, *Sheppard v. Phoenix*, 210 F. Supp. 2d 250 (S.D.N.Y. 1998) (terminating injunction), was a class action that concerned the City's Central Punitive Segregation Unit (CPSU). That litigation unearthed abuse of prisoners and cover-ups sufficiently serious to merit criminal prosecution.

23. *Ingles v. Toro*, 438 F. Supp. 2d 203 (S.D.N.Y. 2006) (approving stipulation of settlement), was a system-wide class action challenging the pervasive practice of using excessive force against inmates incarcerated in New York City's jails. This litigation revealed significant numbers of credible excessive force complaints from prisoners who had been seriously injured by staff in the City jails. The settlement of this class action was intended to provide meaningful improvements in the training, practice, and supervision of agency staff and investigators, and changes in the Department's use of force policy.

24. Additionally, through DOC's elaborate reporting system, the Supervisory Defendants Horn, Thomas, White, Bailey, and Duffy were aware of the pattern of a large number of incidents involving the use of unnecessary and/or excessive force by DOC staff members resulting in serious injuries to inmates but failed to take sufficient steps to curb these abuses.

25. As of the time Mr. Belvett was beaten, the Supervisory Defendants were aware of the unwillingness of the Department to investigate adequately and impose meaningful discipline against DOC staff members who use unnecessary and excessive force on prisoners, or who fail to accurately and honestly report it.

26. Through all these cases and Department reports, DOC and its supervisors have been made aware of the widespread practice by DOC staff members of using excessive and/or unnecessary force to injure, and not restrain, inmates. They have also been made aware of

8

the failures of DOC's Investigation Division to adequately investigate allegations of misconduct and of the *de facto* refusal of the Department to bring effective disciplinary charges against its officers to promote institutional reform and protect the safety of prisoners confined in DOC custody.

27. The Department and the Supervisory Defendants cannot credibly contend that they are unaware of the pattern of abuse that occurs with regularity in New York City jails and the failure of the Department to take sufficient measures to investigate and discipline this abuse.

28. The Department has not taken sufficient steps to curb the abuse that occurs on a daily basis in New York City jails. Indeed, it allows that abuse to persist through inadequate investigations of allegations of misconduct and the failure to discipline officers in the face of obvious wrongdoing.

**The October 5, 2008 Assault of Huston Belvett**

29. On or about October 5, 2008, at approximately 3 or 4 p.m. at the GMDC facility, Mr. Belvett took a shower.

30. After the shower, defendant John Doe # 1 accompanied Mr. Belvett to his cell. During this walk from the shower to the cell, defendant John Doe # 1 remarked in a nasty and aggressive way that Mr. Belvett had taken too long in the shower.

31. Mr. Belvett responded that he had no watch in the shower, and could not monitor his time there.

32. Infuriated by Mr. Belvett's response, defendant John Doe # 1 pushed Mr.

Belvett, and hit Mr. Belvett in the face, on his left jaw.  Then he pushed Mr. Belvett against the wall; punched him on the right side of the face, by his eye; and punched Mr. Belvett a number of times on his body, including on his ribs, stomach, and back.  Next, John Doe # 1 pushed plaintiff onto the bed; punched him in the right eye again; and said "Now what? You think you are fucking tough?"

33. After the attack, Mr. Belvett was locked into his cell.

34. Mr. Belvett repeatedly requested medical care, but he was told by Corrections Officer John Doe # 2 that he had to wait for "sick call" the following morning.

35. The next morning, Mr. Belvett was taken to the facility's health clinic for an x-ray and then to Bellevue Hospital for an MRI.  He had sustained a fracture to the orbital wall, swelling of his right eye and nose, tenderness to the jaw, and pain in his ribs, all of which were documented by medical personnel.

36. For several weeks after the attack, Mr. Belvett suffered from headaches, head ringing, a runny nose, and pain in his face and ribs.

37. Evidencing the fact that Mr. Belvett was the blameless victim of an unprovoked assault by John Doe # 1, Mr. Belvett was not reprimanded or disciplined in connection with the October 5 incident.

38. As a result of the attack, Mr. Belvett was transferred out of GMDC and to RNDC and placed in "close custody," a housing area designated for prisoners at risk of injury at the hands of other prisoners.

39. At no time did Mr. Belvett assault or attempt to assault any officer, nor did he present a threat or perceived threat to the personal safety of any officer or to the security of the

jail so as to warrant the repeated application of blows.  Mr. Belvett did not provoke his beating nor did he conduct himself in any manner that would warrant any use of force, much less the excessive force actually used.  John Does # 1 and 2 acted sadistically and maliciously and demonstrated deliberate indifference toward Mr. Belvett's rights and physical well-being.

40. Within ninety days after the claim alleged in this Complaint arose, a written notice of claim, sworn by plaintiff, was given to Correction Officer Spencer to be served upon defendants at the Comptroller's office at 1 Centre Street, New York, New York.

41. At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

42. This action has been commenced within one year and ninety days after the happening of the event upon which the claims are based.

**The November 5, 2008 Assault of Huston Belvett**

43. On or about November 5, 2008 at RNDC, at approximately 7 a.m., Mr. Belvett was awakened and, without prior notice, instructed to dress and be ready for transport to court.

44. Mr. Belvett objected to these instructions because inmates are usually given time to shower before court appearances and Mr. Belvett had not been given that opportunity.

45. Because Mr. Belvett refused to go to court without first showering, defendant Assistant Deputy Warden Lemon was called to the scene.

46. Defendant Lemon, along with four officers Does # 3-7, opened Mr. Belvett's cell.  Mr. Belvett was lying on his bed.

47. After opening the cell, defendant Lemon kicked a bucket towards Mr. Belvett's head and told him to "get up right now." Mr. Belvett refused.

48. Defendant Lemon then told defendant John Does # 3-7 to "Fuck him up."

49. John Does # 3-7 then restrained Mr. Belvett on the bed, holding down both his back and arms. Fearful that he would be struck in the face, Mr. Belvett attempted to shield himself by turning his face away from the officer.

50. Defendant Lemon and John Does # 3-7 then brutally assaulted Mr. Belvett. John Does # 3-7 repeatedly punched Mr. Belvett. Defendant Lemon maced Mr. Belvett and punched him on the right eye and the back of the head.

51. After this brutal assault, Mr. Belvett was handcuffed and pulled from the cell and into the vestibule or bridge area outside the cell block, between the A & B gates, which is an area to which other inmates have no access.

52. One of the John Doe officers then kneed Mr. Belvett in the back, causing him to fall to his knees. John Doe # 4 then stomped on his bare foot, cutting it. Defendant officers also shoved Mr. Belvett's face into a window.

53. At no time did Mr. Belvett assault or attempt to assault any officer, nor did he present a threat or perceived threat to the personal safety of any officer or to the security of the jail so as to warrant the repeated application of these blows. Mr. Belvett did not provoke his beating nor did he conduct himself in any manner that would warrant any use of force, much less the excessive force actually used.

54. After this attack, a team of DOC staff arrived and escorted Mr. Belvett to a search room.

55. Once in the search room, a captain who is believed to be defendant Primm and John Does # 9-10 told Mr. Belvett that, as soon as they removed his handcuffs, he was to place his hands against the wall. Because he did not immediately follow the order, defendant Primm punched him in the head. Defendant Officer John Doe # 9 then punched Mr. Belvett in the face. Mr. Belvett fell to the floor due to the assault.

56. When Mr. Belvett was on the floor, defendant Primm and John Does # 9-10 then brutally kicked and stomped on Mr. Belvett's face, head, and ribs.

57. Mr. Belvett then said, in words or substance, "It took three of you to beat me up. Give me the one-on-one." (A "one-on-one" is the term used by DOC officers and detainees to describe the process whereby one officer and one inmate are allowed to fight each other in the presence of other DOC officers.) The officers agreed and asked Mr. Belvett: "Which one?" Mr. Belvett requested John Doe # 4. Mr. Belvett and John Doe # 4 then fought as the other officers watched. Defendant John Doe # 4 struck Mr. Belvett in the face. John Doe #10, a captain, eventually separated the two men.

58. Mr. Belvett was then subjected to a second "one-on-one" fight, this time with John Doe # 8. Mr. Belvett, an asthmatic, had trouble breathing and the fight ended.

59. At or around 5 or 6 p.m. that day, Mr. Belvett was taken to DOC health services for medical care.

60. As a result of this assault, Mr. Belvett sustained facial trauma, swelling of the face, an injured wrist, a cut near his eye and on his right foot, severely bruised ribs, and bruising all over the rest of his body.

61. Mr. Belvett suffered severely for weeks after the assault. His ribs hurt and

he had a large bump on the back of his head. He had to wear a cast on his wrist and arm for several months. Mr. Belvett continues to suffer physical and emotional injuries as a result of these assaults.

62. By brutally assaulting him, these defendants acted sadistically and maliciously and demonstrated deliberate indifference toward Mr. Belvett's rights and physical well-being. Moreover, by failing to intervene in order to prevent the assault on, or prevent further injury to, Mr. Belvett, these defendants demonstrated a deliberate indifference to a substantial risk of serious harm to Mr. Belvett.

63. Within ninety days after the claim alleged in this Complaint arose, a written notice of claim, sworn to by Plaintiff, was served upon Defendants by personal delivery of the notice, in duplicate, to the Comptroller's office at 1 Centre Street, New York, New York.

64. At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

65. This action has been commenced within one year and ninety days after the happening of the event upon which the claims are based.

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983/Fourteenth Amendment
### (Against All Individual Defendants)

66. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

67. By reason of the foregoing, and by assaulting, battering, and using

gratuitous, excessive, brutal, sadistic, and unconscionable force, failing to prevent other defendants from doing so, or failing to provide necessary medical care, the Individual Defendants deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourteenth Amendment to the United States Constitution to be free from gratuitous and excessive force.

68. Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employments as DOC officers and employees. Said acts by defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. These defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and the Fourteenth Amendment to the United States Constitution.

69. Defendants Horn, Thomas, White, Duffy, and Bailey knew that the pattern of physical abuse described above existed in the City jails prior to and including the time of the assaults on plaintiff. Their failure to take measures to curb this pattern of brutality constitutes acquiescence in the known unlawful behavior of their subordinates. The prevalence of these practices and general knowledge of their existence at the time of plaintiff's beatings, and the failure of these defendants to take remedial action and provide adequate medical care despite the fact that the misuse of force in City jails had been persistently brought to their attention, constitutes deliberate indifference to the rights and safety of the inmates in their care and custody, including plaintiff. These defendants' conduct has been a substantial factor in the continuation of such violence and a proximate cause of the constitutional violations alleged in this complaint.

70.	As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

## **SECOND CLAIM FOR RELIEF**
### 42 U.S.C. § 1983/Fourteenth Amendment
### (Against Defendant City)

71.	Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

72.	Defendant City, through DOC, and acting under the pretense and color of law, permitted, tolerated and was deliberately indifferent to a pattern and practice of staff brutality and retaliation by DOC staff at the time of plaintiff's beatings.  This widespread tolerance of correction officer abuse of prisoners constituted a municipal policy, practice, or custom and led to plaintiff's assaults.

73.	By permitting, tolerating, and sanctioning a persistent and widespread policy, practice, and custom pursuant to which plaintiff was subjected to brutal beatings and untimely medical care, defendant City has deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed under the Fourteenth Amendment to be free from gratuitous and excessive force.

74.	As a direct and proximate result of the policy, practice, and custom detailed above, plaintiff sustained the damages hereinbefore alleged.

### THIRD CLAIM FOR RELIEF
### Assault and Battery
### (Against All Defendants)

75. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

76. In assaulting, battering, and threatening plaintiff, or standing by and failing to intervene when plaintiff was assaulted, the Individual Defendants, acting in their capacities as DOC officers, and within the scope of their employment, each committed a willful, unlawful, unwarranted, and intentional assault and battery upon plaintiff.

77. The assault and battery by these defendants was unnecessary and unwarranted in the performance of their duties as DOC officers and constituted an unreasonable and excessive use of force.

78. Defendants, their officers, agents, servants, and employees were responsible for plaintiff's assault and battery and the subsequent failure to provide adequate medical care. Defendant City, as employer of each of the defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

79. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

### FOURTH CLAIM FOR RELIEF
### Negligent hiring/training/retention of
### Employment Services
### (Against Defendant City)

80. Plaintiff repeats and realleges the foregoing paragraphs as if the same were

17

fully set forth at length herein.

81. Defendant City, through the DOC, owed a duty of care to plaintiff to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that injury to plaintiff or to those in a like situation would probably result from the foregoing conduct.

82. Upon information and belief, all of the Individual Defendants were unfit and incompetent for their positions.

83. Upon information and belief, defendant City knew or should have know through the exercise of reasonable diligence that the Individual Defendants were potentially dangerous.

84. Upon information and belief, defendant City's negligence in screening, hiring, training, disciplining, and retaining these defendants proximately caused each of plaintiff's injuries.

85. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## PRAYERS FOR RELIEF

WHEREFORE, plaintiff requests that the Court grant the following relief jointly and severally against defendants:

86. Compensatory damages in an amount to be determined at trial for the physical and psychological injuries sustained by Mr. Belvett as a result of the events alleged

herein.

87. Punitive damages against the Individual Defendants in an amount to be determined at trial.

88. An order awarding plaintiff reasonable attorneys' fees, together with the costs of this action.

89. Such other further relief as the Court may deem appropriate.

Dated: September 22, 2009
New York, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP

_____
Andrew G. Celli, Jr. (AG 3598)
Elizabeth S. Saylor (ESS 8091)
75 Rockefeller Plaza
New York, New York 10019
(212) 763-5000

THE LEGAL AID SOCIETY
Jonathan S. Chasan (JC 9018)
Mary Lynne Werlwas (MW 6403)
199 Water Street, 6th Floor
New York, New York 10038
(212) 577-3530